UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| VINCENT MICHAEL MARINO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-865 (RMC) |
| DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

On May 29, 2012, Vincent M. Marino filed a *pro se* lawsuit against several agencies within the Department of Justice for allegedly violating the Freedom of Information Act, Privacy Act, and Sunshine Act. Currently incarcerated in federal prison on racketeering and drug-related convictions, Mr. Marino requests a variety of records that he believes will both exonerate him and show government misconduct. Specifically, Mr. Marino claims that the records will show that Angelo "Sonny" Mercurio, James "Whitey" Bulger, and Stephen Flemmi set him up with false charges, aided and abetted by rogue federal agents and prosecutors. The defending federal agencies move to dismiss, or in the alternative for summary judgment. The Court finds that the motion largely is premature. While Mr. Marino's Sunshine Act claim is facially frivolous, his other causes of action are not so clearly without merit. Some agencies did not conduct any search for responsive records while others performed searches only partially responsive to Mr. Marino's requests. Unable to find that the defending federal agencies conducted adequate searches, reasonably calculated to identify responsive records, the Court will deny without prejudice the motion to dismiss, or in the alternative, motion for summary judgment.

1

I. FACTS

A. Background

Mr. Marino is imprisoned at Federal Correctional Institution (FCI) McDowell in West Virginia, Compl. [Dkt. 1] at 2, after convictions for racketeering, conspiracy to murder in aid of racketeering, and drug possession in the District Court for the District of Massachusetts, *see United States v. Marino*, 277 F.3d 11 (1st Cir. 2002); Mot. to Dismiss or Summ. J. [Dkt. 14] at 2-3. A repeat litigator,[1] Mr. Marino now sues several components of DOJ (collectively, Defendants) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Privacy Act of 1974, *id.* § 552a, and Sunshine Act, *id.* § 552b. Specifically, Mr. Marino names: the Office of the Attorney General (OAG); the Criminal Division of the Department of Justice (CRIM); the Executive Office of the U.S. Attorneys (EOUSA); the Federal Bureau of Investigation (FBI); the Office of Enforcement Operations (OEO); the Office of Information and Policy (OIP); the U.S. Attorney's Office for the District of Columbia (USAO-DC); and the U.S. Attorney's Office for the District of Massachusetts (USAO-MA). Compl. at 2. Mr. Marino seeks records that allegedly demonstrate his actual and legal innocence of the "Salemme attempted murder," racketeering convictions, and drug convictions, including records from meetings allegedly held by Assistant U.S. Attorneys (AUSAs) to achieve a "potential out of court settlement" that "facilitated FRAUD [sic] upon the Federal Grand Jury [sic]." *Id.* at 3-4. Mr. Marino claims that these records show "egregious governmental misconduct, due process violations, . . .

---

[1] In *Marino v. CIA*, Civ. No. 11-813, 2012 WL 4482986 (D.D.C. Sept. 28, 2012), *aff'd*, 12-5325 (D.C. Cir. Oct. 21, 2013) (*per curiam*), Mr. Marino filed a FOIA suit against twenty-seven federal agencies, including the Department of Justice (DOJ), requesting records concerning the government's alleged manipulation of his mind via electronic devices implanted in his body. Because his factual allegations were fantastical and factually frivolous, the case was dismissed under Federal Rule of Civil Procedure (FRCP) 12(b)(1). *Id.* at *2.

governmental impediments," and violations of his rights to exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at 3.

### B. Mr. Marino's Records Requests

From 2011 to 2012, Mr. Marino sent numerous letters to Defendants requesting multiple records. Defendants designated these letters as follows: FOIA Request No. CRM-201200185P; FOIA Request No. 2011-2085; FOIA Request No. 2011-2968; FOIA Request No. 2011-2969; and FOIA Request No. 2011-3089. Many of the requests overlapped and nearly all sought at least one of the following types of records: sealed documents from *United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999), *rev'd in part*, *United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000), a criminal matter not involving Mr. Marino; FBI recordings regarding the Salemme attempted murder; verdict forms from Mr. Marino's criminal prosecutions; and records relating to Mr. Marino generally.

1. *FOIA Request No. CRM-201200185P*

On March 2, 2012, CRIM received a letter from Mr. Marino dated February 20, 2012. Defs.' Statement of Facts [14-1] ¶¶ 1-2; Courter Decl. [Dkt. 14-4] ¶¶ 5-6. As relevant, the letter requested:

> any & all records, documents, memoranda, statements, reports, & other information or data in whatever form, maintained by your agency that relates to and/or makes reference to [Mr. Marino], directly or indirectly, more specifically [Mr. Marino], requests the (Under Seal Documents) described in *U.S. v. Salemme*, 91 F.Supp.2d [sic] pages 267-269 (D.Mass.1999) [sic] which shows that FBI publicly known informants Angelo "Sonny" Mercurio, James "Whitey" Bulger & Stephen "The Rifleman" Flemmi called Salemme to a location in June 16, 1989 to be shot while all three informants worked for convicted FBI agent Connolly.

Courter Decl., Ex. 1 [Dkt. 14-4] at 1. Mr. Marino also asked that any queries for responsive documents include his aliases, which he listed as "Vincent Michael Portalla" and "Gigi." *Id.* at

3

2. These requests were made pursuant to FOIA and the Privacy Act. CRIM construed the letter as a request for records relating to Mr. Marino's District Court for the District of Massachusetts criminal matter, Case No. 4:97-40009. Defs.' Statement of Facts ¶ 1; Courter Decl. ¶ 5. CRIM designated the letter as FOIA Request No. CRM-201200185P and performed a search for responsive records using the terms "Marino, Vincent Michael" and "Marino, Vincent." Defs.' Statement of Facts ¶¶ 1, 4; Courter Decl. ¶¶ 5, 7. No responsive records were found and CRIM notified Mr. Marino of the search results on May 14, 2012. Defs.' Statement of Facts ¶ 5; Courter Decl. ¶ 8; *see id.*, Ex. 2 [Dkt. 14-4].

After the instant litigation commenced, CRIM conducted additional searches for records responsive to Mr. Marino's February 20, 2012 request. CRIM searched the records of the Electronic Surveillance Unit of OEO and the Organized Crime and Gang Section (OCGS). Defs.' Statement of Facts ¶ 6; Courter Decl. ¶ 9. Using Mr. Marino's last name and, this time, his aliases, CRIM searched one of ESU's electronic databases and one of its shared computer drives. Defs.' Statement of Facts ¶¶ 7-8, 10; Courter Decl. ¶¶ 10-11, 13-14. Similarly, CRIM searched OCGS's four electronic databases with a query using the search terms "Vincent Marino," "Vincent Michael Marino," "Vincent Portalla," "Vincent Michael Portalla," and "Gigi." Defs.' Statement of Facts ¶¶ 11-13; Courter Decl. ¶¶ 15-17. It also searched the physical files of ESU and OCGC. Defs.' Statement of Facts ¶¶ 9, 14; Courter Decl. ¶¶ 12, 18. In these searches, CRIM located a total of seventeen pages of records. Defs.' Statement of Facts ¶¶ 8, 10, 13; Courter Decl. ¶¶ 11, 14, 17.

CRIM processed the responsive records found in its second search, and on March 15, 2013, sent a letter to Mr. Marino informing him of the search results. Defs.' Statement of Facts ¶ 15; Courter Decl. ¶ 19; *see id.*, Ex. 3 [Dkt. 14-4]. Out of the seventeen pages of

4

responsive records, CRIM released to Mr. Marino one page in full and seven pages in part, and withheld nine pages in full pursuant to FOIA Exemptions 5, 6, and 7(C). Courter Decl. ¶ 19.

2. *Records Request to FBI*

Mr. Marino sent a letter to FBI dated February 20, 2012. Defs.' Statement of Facts ¶ 33; Hardy Decl. [14-3] ¶ 5. As with his request to CRIM, Mr. Marino relied on FOIA and the Privacy Act to ask for the sealed documents from the *Salemme* prosecution and records generally relating to Mr. Marino and his aliases. Hardy Decl., Ex. A [Dkt. 14-3] at 2-3. Construing Mr. Marino's letter only as a request for sealed court documents, FBI responded on April 12, 2012, that it did not maintain the records Mr. Marino sought. FBI advised Mr. Marino to direct his requests for sealed records to EOUSA. Defs.' Statement of Facts ¶ 34; *see* Hardy Decl., Ex. B [Dkt. 14-3].

3. *FOIA Request Nos. 2011-2085, 2011-2968, 2011-2969, 2011-3089*

Over the course of approximately ten months, OAG, OEO, FBI, EOUSA, USAO-MA, USAO-DC,[2] and OIP received a combined total of ten letters from Mr. Marino. EOUSA grouped these letters under four FOIA numbers. The letters dated May 16, 2011, June 16, 2011, June 22, 2011, July 6, 2011, July 7, 2011, and March 6, 2012, were designated as FOIA Request No. 2011-2085. The letter dated May 31, 2011, and the two letters both dated July 12, 2011, were designated as FOIA Request No. 2011-3089. Finally, EOUSA split the letter dated August

---

[2] According to an affidavit provided by USAO-DC, Mr. Marino never sent a FOIA request to USAO-DC. Defs.' Statement of Facts ¶ 35; Kelly Decl. [Dkt. 14-2] ¶ 5. The affidavit, however, does not attempt to reconcile this assertion with the fact that Mr. Marino listed USAO-DC as a recipient on several of his letters. It does state, however, that on or about February 6, 2013, USAO-DC searched its data systems for records responsive to the issues raised in Mr. Marino's Complaint. Defs.' Statement of Facts ¶ 36; Kelly Decl. ¶ 6. Specifically it searched for "information concerning Vincent Michael Marino, his aliases, and the June 16, 1989 Salemme attempted murder charge." *Id.* USAO-DC set "search parameters as broadly as possible" and crafted queries using Mr. Marino's first name, last name, and aliases. Defs.' Statement of Facts ¶ 37-39; Kelly Decl. ¶¶ 7-9. USAO-DC reports that its search did not result in the identification of any responsive records. Defs.' Statement of Facts ¶ 40; Kelly Decl. ¶ 10.

5

15, 2011, into two requests: FOIA Request Nos. 2011-2968 and 2011-2969. Defs.' Statement of Facts ¶¶ 41-45; Brandon Decl. [Dkt. 15-1] ¶¶ 4-8.

Although EOUSA did not group the letters by subject, each letter from Mr. Marino sought at least one of four types of records. The letters dated May 16, 2011, May 31, 2011, and June 16, 2011, asked for records under FOIA and the Privacy Act pertaining to Mr. Marino that concerned "paranormal, esoteric phenomena events in the Federal Bureau of Prison" or the "implantation of electronic devices" in his body. *See* Brandon Decl., Ex. A [Dkt. 15-1] at 1; *id.*, Ex. B [Dkt. 15-1] at 1; *id.*, Ex. G [Dkt. 15-2] at 1. The letter dated July 6, 2011, and one of the letters dated July 12, 2011, requested records under FOIA concerning Mr. Marino or his aliases as well as "the December 22, 1999 'Verdict Sheet'" from his District Court for the District of Massachusetts criminal matter, Case No. 4:97-40009. *Id.*, Ex. D [Dkt. 15-1] at 1-2; *id.*, Ex. H [Dkt. 15-2] at 1-2. These letters also asked for certain corrections to the verdict sheet pursuant to the Privacy Act. *Id.* The letter dated August 15, 2011, sought records under FOIA and the Privacy Act relating to Mr. Marino that involved DOJ's designation of him as a "terrorist, a member of a militia, or a sovereign citizen." Brandon Decl., Ex. J [Dkt. 15-3] at 1-2. Finally, each of the letters dated June 22, 2011, July 7, 2011, and March 6, 2012, as well as the other July 12, 2011 letter, made the same FOIA and Privacy Act requests as those submitted to CRIM and FBI: the sealed documents from the *Salemme* prosecution and records generally relating to Mr. Marino or his aliases. *Id.*, Ex. C [Dkt. 15-1] at 1-2; *id.*, Ex. E [Dkt. 15-1] at 2-3; *id.*, Ex. F [Dkt. 15-2] at 1-2; *id.*, Ex. I [Dkt. 15-3] at 2-3.

EOUSA responded to Mr. Marino on July 13, 2012, with a letter that informed him that his requests were insufficient to identify the sealed documents he sought from *Salemme*. EOUSA explained that the pages he cited "contain[ed] references to multiple documents that

6

may or may not be under seal." Defs.' Statement of Facts ¶ 46; Brandon Decl., Ex. K [Dkt. 15-3] at 1. To make its records search "meaningful," EOUSA asked Mr. Marino to "provide a citation to the specific record" that he sought. Ex. K at 1. Mr. Marino answered on July 24, 2012, with a list of: specific pages and exhibits from *Salemme*; citations to other decisions, including his own cases; and a file number for four FBI tapes from 1989 concerning the Salemme attempted murder. Defs.' Statement of Facts ¶ 47; Brandon Decl., Ex. L [Dkt. 15-3] at 2. Mr. Marino told EOUSA that he was "willing to pay all costs up to $1000.00 to receive" the records he had requested. Ex. L at 2.

EOUSA then directed USAO-MA to search for records responsive to Mr. Marino's requests. Admittedly confused by the scope of Mr. Marino's requests, USAO-MA, with the assistance of the AUSA who had prosecuted Mr. Marino, conducted a search for responsive records. An approximately two-hour search yielded three file cabinets, thirty-five boxes, and approximately 72,000 electronic files containing potentially responsive records. Defs.' Statement of Facts ¶¶ 48-51; Brandon Decl. ¶¶ 12-14.

EOUSA wrote again to Mr. Marino on November 20, 2012, updating him on its search. EOUSA reported the volume of records that its initial search had uncovered, and estimated that completing the search would require approximately 320 hours. Based on a search time fee of twenty-eight dollars per hour, EOUSA estimated the total cost of the search to be $8,960.00. It asked Mr. Marino to remit a check or money order for this amount, narrow his request, or specify the amount he was willing to pay (in which case EOUSA would only process records up to that amount). Defs.' Statement of Facts ¶¶ 51-52; Brandon Decl., Ex. M [Dkt. 15-3] at 1.

On December 17, 2012, EOUSA received a request from Mr. Marino for a fee waiver. Defs.' Statement of Facts ¶ 53. Mr. Marino asserted that the records would show "egregious governmental misconduct, due process violations [and] [would] serve[] as a substantial public interes[t]." Brandon Decl., Ex. N [Dkt. 15-3] at 10. EOUSA denied this request on January 16, 2013. Defs.' Statement of Facts ¶ 54. It informed Mr. Marino that, to receive a waiver or reduction in fees, he had to "demonstrate that 'disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester.'" Brandon Decl., Ex. O [Dkt. 15-4] (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). Based on the factors set forth in 28 C.F.R. § 16.11(k), EOUSA found that Mr. Marino did not qualify for a waiver or fee reduction. It again directed him either to narrow his request or designate the amount of money he was willing to pay. EOUSA concluded its letter by informing Mr. Marino that he could appeal its decision within sixty days of the date of the letter, and that failure to respond within thirty days would result in closure of his FOIA and Privacy Act requests. Defs.' Statement of Facts ¶ 55; Brandon Decl. ¶ 18.

On January 17, 2013, and February 10, 2013, Mr. Marino appealed the denial of his fee waiver request. Brandon Decl., Ex. P [Dkt. 15-4]; *id.*, Ex. R [15-4]. He sent one letter directly to OIP, the DOJ component that handles FOIA administrative appeals, *see* 28 C.F.R. § 16.9(a), and another to EOUSA, which forwarded it to OIP, Defs.' Statement of Facts ¶ 57; Brandon Decl. ¶ 20. The record is unclear as to the outcome of Mr. Marino's appeals.

To date, Mr. Marino has not submitted to EOUSA the $8,960.00 search fee. Defs.' Statement of Facts ¶ 56; Brandon Decl. ¶ 19. EOUSA administratively closed all four of

Mr. Marino's FOIA requests on February 28, 2013, for failure to pay the search fee within thirty days of January 16, 2013. Brandon Decl., Ex. Q [Dkt. 15-4].

**C. The Instant Litigation**

Mr. Marino's Complaint seeks some, but not all, of the records he originally requested. The Complaint alleges FOIA and Privacy Act violations resulted because Defendants failed to release the sealed records from *Salemme*, the verdict forms from Mr. Marino's criminal case, the four FBI tapes from 1989 concerning the Salemme attempted murder, and records generally relating to Mr. Marino by name or one of his aliases. It also asserts that Defendants violated the Sunshine Act by not disclosing records from meetings federal prosecutors held concerning the criminal prosecution of Mr. Marino. The Complaint does not allege that the responses to Mr. Marino's request for records pertaining to paranormal phenomena or his designation as a terrorist, militia member, or "sovereign citizen" violated any law. *See* Compl. To remedy Defendants' alleged FOIA, Privacy Act, and Sunshine Act violations, Mr. Marino asks for injunctive and monetary relief.[3]

On March 25, 2013, Defendants moved to dismiss, or in the alternative for summary judgment. *See* Mot. to Dismiss or Summ. J. The Court entered a *Fox-Neal* Order on April 2, 2013. *See* Apr. 2, 2013 Order [Dkt. 17]; *see also Neal v. Kelly*, 963 F.2d 453 (D.C. Cir.

---

[3] In conjunction with the records requests, the Complaint discusses the requisite proof for racketeering convictions, the Double Jeopardy Clause of the Fifth Amendment, and *Brady*, 373 U.S. 83. To the extent a liberal reading of this *pro se* Complaint could suggest that Mr. Marino also is petitioning for a writ of habeas corpus, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004), the Court finds that it is without jurisdiction. A writ of habeas corpus acts upon the person who holds a prisoner in custody. *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1237-38 (D.C. Cir. 2004). "[A] district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction." *Id.* at 1239. Mr. Marino resides at FCI McDowell in West Virginia. Accordingly, the warden of that facility is the proper respondent to any habeas petition Mr. Marino may wish to pursue, and the District Court for the Southern District of West Virginia has proper jurisdiction over any such petition. Because Mr. Marino's allegations are vague and uncertain, the Court will not transfer this matter.

9

1992); *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988). Mr. Marino filed his Opposition to Defendants' motions on May 31, 2013. Opp'n [Dkt. 19]. Defendants filed a Reply on July 12, 2013. Reply [Dkt. 21].

## II. LEGAL STANDARDS

### A. FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd*, *Sanders v. Dep't of Justice*, Civ. No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011). The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, the agency must show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)). Agencies are not required to search every record system, but agencies must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d

1172 (D.C. Cir. 1996). An agency may prove the reasonableness of its search by a declaration by responsible agency officials, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Once an agency has provided such affidavits, the burden shifts back to the plaintiff to demonstrate the lack of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). If a review of the record raises substantial doubt as to the reasonableness of a search, especially in light of "well-defined requests and positive indications of overlooked materials," then summary judgment may be inappropriate. *Founding Church of Scientology of Washington, D.C. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

### B. Privacy Act

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records by allowing an individual to participate in ensuring that his records are accurate and properly used." *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (internal quotations and citations omitted). "To that end, the Act requires any agency which maintains a 'system of records' to publish at least annually a statement in the Federal Register describing that system." *Id.*; 5 U.S.C. § 552a(e)(4). The Privacy Act ensures that an individual can access his or her records and request amendment of those records to correct any inaccuracies. 5 U.S.C. § 552a(d)(1)-(3). A civil action is available to correct an inaccurate record that an agency has refused to amend or an individual request with which an agency has not complied. 5 U.S.C. § 552a(g)(1)(A)-(B). While the Privacy Act generally permits the correction of facts, it does not allow for the "correction of opinions or judgments." *McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006).

### C. Sunshine Act

Congress enacted the Sunshine Act to ensure that the government "conduct[s] the public's business in public." *Shurberg Broad. of Hartford, Inc. v. FCC*, 617 F. Supp. 825, 828 (D.D.C. 1985) (internal quotations and citations omitted). Its applicability, however, is limited. The Sunshine Act "clearly does not apply to agencies headed by a single individual." *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238, 243 (D.C. Cir. 1981). Instead, it only covers agencies "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency." 5 U.S.C. § 552b(a)(1).

### D. Motion to Dismiss

Defendants contend that Mr. Marino has failed to state a claim under FOIA by failing to exhaust his administrative remedies. A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the adequacy of a complaint on its face. In other words, it tests whether the plaintiff has properly stated a claim. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must

treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Yet a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Even though *pro se* complaints are construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004), the complaint must still be sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). A plaintiff need not plead detailed factual allegations. But his grounds for relief must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action," and the facts alleged "must be enough to raise a right to relief above the speculative level." *Id.*

Exhaustion of administrative remedies is required under FOIA before a party can seek judicial review. *Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985); *see also Oglesby*, 920 F.2d 57, 61-62 (D.C. Cir. 1990). Failure to comply with FOIA and agency regulations by filing a proper request "amounts to a failure to exhaust administrative remedies" and is properly considered on a motion to dismiss. *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (citing, *inter alia*, *Gillin v. IRS*, 980 F.2d 819 (1st Cir. 1992)). This exhaustion requirement is a "'a jurisprudential doctrine' rather than a jurisdictional prerequisite," *Skrzypek v. Dep't of Treasury*, 550 F. Supp. 2d 71, 73 (D.D.C. 2008); if a plaintiff's administrative remedies have not been exhausted, "the matter is properly the subject of a motion brought under

Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Jones v. Dep't of Justice*, 576 F. Supp. 2d 64, 65-66 (D.D.C. 2008).

### E. Motion for Summary Judgment

Defendants contend that there is no genuine dispute as to any material fact and that they are entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project*, 656 F.2d at 738; *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each

withheld document, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

### III. ANALYSIS

#### A. Dismissal of the Sunshine Act Claim With Prejudice

As an initial matter, the Court *sua sponte* dismisses with prejudice Mr. Marino's Sunshine Act cause of action. Regrettably, Defendants' briefing is devoid of any reference to the Sunshine Act. Nonetheless, Mr. Marino's claim under that Act is facially frivolous. The Sunshine Act only provides access to records from meetings of a "collegial body composed of two or more individual members." 5 U.S.C. § 552b(a)(1). It does not apply to DOJ, which is headed by a single individual, the Attorney General. *See Nichols v. Reno*, 931 F. Supp. 748, 753 (D. Colo. 1996) (holding that the Sunshine Act is inapplicable to DOJ), *aff'd*, 124 F.3d 1376 (10th Cir. 1997). *See also Parravano v. Babbitt*, 837 F. Supp. 1034, 1048 (N.D. Cal. 1993) (explaining that the Sunshine Act does not apply to the Department of Commerce because it "is headed by a single person, not a collegial body"), *aff'd*, 70 F.3d 539 (9th Cir. 1995). Mr. Marino's Sunshine Act claim must be dismissed with prejudice.

#### B. Denial of Defendants' Motion as to the Privacy Act Claims

Defendants' briefing also fails to address Mr. Marino's Privacy Act claims. This error appears to have resulted from Defendants conflating Mr. Marino's Privacy Act claims with his FOIA claims. Such briefing, nonetheless, is insufficient. Accordingly, the Court denies

15

without prejudice Defendants' Motion insofar as it seeks dismissal or summary judgment on Mr. Marino's Privacy Act claims.

### C. Denial of Defendants' Motion as to the FOIA Claims

As for Mr. Marino's FOIA claims, the Court also will deny Defendants' Motion albeit for differing reasons. The affidavits submitted with Defendants' motion do not state that the DOJ components to whom the FOIA requests were directed conducted adequate and reasonable searches calculated to discover the records Mr. Marino requested. *SafeCard*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 950-51.

1. *OIP, OAG, OEO, and USAO-DC*

As far as the record shows, OIP, OAG, and OEO failed to conduct *any* search in response to Mr. Marino's requests. Defendants contend that OIP "was not a direct recipient" of a FOIA request and therefore should be dismissed pursuant to FRCP 12(b)(6). Mot. to Dismiss or Summ. J. at 1 n.4. Similarly, Defendants argue that OAG never received a FOIA request from Mr. Marino, and therefore no search was necessary as Mr. Marino failed to exhaust his administrative remedies. *Id.* at 12-13. Defendants' briefing omits any argument concerning OEO's obligations. *See* Ex. F at 10. Defendants' exhibits, however, directly contradict these arguments. Attached to the Brandon Declaration are numerous FOIA requests from Mr. Marino to these components of DOJ. *See* Exs. D, E, G, H, I, and J. Defendants do not contend that Mr. Marino mailed his letters only to some of the recipients listed in his letters, nor do they claim that the letters were somehow insufficient for purposes of triggering a response from the recipient agencies. Consequently, the Court finds that OIP, OAG, and OEO overlooked Mr. Marino's

requests and did not establish that they conducted adequate and reasonable searches for records responsive to Mr. Marino's requests.[4]

2. *EOUSA and USAO-MA*

EOUSA and USAO-MA clearly received Mr. Marino's requests and USAO-MA conducted searches for responsive records, as directed by EOUSA. USAO-MA, however, did not complete its review of the records because Mr. Marino failed to pay in advance $8,960.00 in search fees. Defendants contend that EOUSA and USAO-MA should be granted summary judgment as to the FOIA claims because Mr. Marino has not established his entitlement to a fee waiver. Defendants' briefing, however, ignores the July 24, 2012 letter Mr. Marino sent to EOUSA in response to its July 13, 2012 request for more specificity as to the records Mr. Marino sought. In that letter, Mr. Marino revised his FOIA requests and expressly limited the search fees he was willing to incur to $1,000.00. Ex. L at 2. Ignoring this information, EOUSA continued to press Mr. Marino to pay $8,960.00 for the completion of USAO-MA's search. On November 20, 2012 and January 16, 2013, EOUSA informed Mr. Marino that he was required to pay $8,960.00, narrow his FOIA request, or designate a monetary cap for the search. *See* Exs. M, N. EOUSA never acknowledged the $1,000.00 maximum expenditure that Mr. Marino requested in July 2012.

There is no indication in the record that Mr. Marino could not have made a $1,000.00 advance payment or that he also would have sought a fee waiver for this amount. Indeed, Mr. Marino makes this point in his Opposition. He states that Defendants "ignored" his

---

[4] Despite attaching to their motions for dismissal and summary judgment an affidavit detailing the search USAO-DC undertook based on the Complaint alone, *see* Kelly Decl., Defendants' briefing is silent as to the reasonableness or adequacy of that search. Because Defendants do not advance the argument in their motions, the Court will not consider whether the search USAO-DC conducted based on the Complaint also satisfied its FOIA and Privacy Act obligations vis-à-vis the requests Mr. Marino made by letter.

17

request for "a new search fee much less than the $8,960.00" estimated search cost. Opp'n at 4. Accordingly, Defendants' arguments, which strictly focus on Mr. Marino's eligibility for a fee waiver, are not relevant to the issue presented. The Court finds that EOUSA and USAO-MA did not establish that they conducted an adequate or reasonable search for responsive records.

        3. *CRIM and FBI*

CRIM and FBI acknowledge receiving FOIA requests from Mr. Marino, and CRIM states that it produced a handful of responsive records to Mr. Marino. The record, however, demonstrates that CRIM and FBI read Mr. Marino's FOIA in narrow and divergent ways. Mr. Marino requested documents generally pertaining to him *and* sealed documents from *Salemme*. CRIM construed the request as limited to records generally concerning Mr. Marino and conducted a search accordingly. FBI read the request as seeking only sealed documents from *Salemme*, informed Mr. Marino that it does not maintain sealed court documents, and never conducted any search. Neither agency has explained why it was appropriate to ignore half of Mr. Marino's FOIA request. The Court finds that CRIM and FBI failed to show that they conducted an adequate and reasonable search for responsive records.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion for Dismissal or for Summary Judgment. The Court will dismiss *sua sponte* Mr. Marino's Sunshine Act claim with prejudice. Defendants' Motion as to the remaining claims is denied without prejudice. A memorializing Order accompanies this Memorandum Opinion.

Date: November 12, 2013

/s/
ROSEMARY M. COLLYER
United States District Court