UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VINCENT MICHAEL MARINO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-865 (RMC) |
| DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

Vincent M. Marino currently is incarcerated in federal prison on racketeering and drug-related convictions. He maintains his innocence, claiming that assorted mobsters, aided and abetted by rogue federal agents and prosecutors, pinned false charges on him. Last year, Mr. Marino brought yet another *pro se* action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Privacy Act, *id.* § 552a, and Sunshine Act, *id.* § 552b.[1] *See* Compl. [Dkt. 1] at 1-3. This time he sues eight agencies of the Department of Justice,[2] claiming that Defendants erred in failing to release the following records: (1) sealed records from *United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999), *rev'd in part*, *United States v. Flemmi*, 225 F.3d 78 (1st Cir.

---

[1] As this Court has noted previously, Mr. Marino is a repeat FOIA litigator. In *Marino v. Central Intelligence Agency*, Civ. No. 11-813, 2012 WL 4482986 (D.D.C. Sept. 28, 2012), *aff'd*, 12-5325 (D.C. Cir. Oct. 21, 2013) (per curiam), Mr. Marino sought records concerning the government's alleged manipulation of his mind via electronic devices implanted in his body, *id.* at *1. The Court dismissed his case because his factual allegations were fantastical and factually frivolous. *Id.* at *2.

[2] The named defendants (collectively, Defendants) are the Office of the Attorney General (OAG); the Criminal Division of the Department of Justice (CRIM); the Executive Office of the U.S. Attorneys (EOUSA); the Federal Bureau of Investigation (FBI); the Office of Enforcement Operations (OEO); the Office of Information and Policy (OIP); the U.S. Attorney's Office for the District of Columbia (USAO-DC); and the U.S. Attorney's Office for the District of Massachusetts (USAO-MA).

2000), a criminal matter not involving Mr. Marino; the verdict forms from Mr. Marino's criminal case; four FBI tapes from 1989 concerning an attempted murder; and records that generally relate to Mr. Marino by name or one of his aliases. *See Marino v. Dep't of Justice*, Civ. No. 12-865, 2013 WL 5979753, at *5 (D.D.C. Nov. 12, 2013). Mr. Marino contends that these records will not only prove his theories of government misconduct, but also, will exonerate him. *See* Compl. at 3 (explaining that the requested records will show his "actual innocence" as well as "egregious governmental misconduct").

At issue in this phase of the litigation is whether Mr. Marino must pay certain fees associated with his records request. Mr. Marino contends that he should receive a fee waiver because the records he requests will benefit the public's interest in how its government operates. At the same time, he concedes that the information he seeks already exists in the public domain. Moreover, Mr. Marino fails to provide sufficient information concerning how he will disseminate the records that he requests. Because these deficiencies are fatal to Mr. Marino's fee waiver request, the Court will deny Mr. Marino's motion.

## I.   FACTS

In March 2013, Defendants moved to dismiss Mr. Marino's suit, or in the alternative, for summary judgment. The Court *sua sponte* dismissed with prejudice Mr. Marino's Sunshine Act claim, *Marino*, 2013 WL 5979753, at *8, but denied without prejudice Defendants' motion, *id.* at *8-9. The Court explained that Defendants neither had addressed adequately Mr. Marino's Privacy Act claims nor had established that the searches conducted in response to Mr. Marino's FOIA claims were adequate and reasonable. *Id.* at *8.

As relevant here, the Court faulted Defendants for their handling of the search fees that Mr. Marino owed in connection with his records request to EOUSA and USAO-MA.

The Court observed that USAO-MA had conducted searches for responsive records, but had refused to complete its review until Mr. Marino paid $8,960.00 in search fees. Defendants claimed that Mr. Marino was ineligible for a fee waiver, but Mr. Marino was not seeking such a waiver. Instead, Mr. Marino had asked EOUSA to cap his search fees at $1,000.00. EOUSA and USAO-MA ignored this request. Further, there was no indication in the record that Mr. Marino could not have made a $1,000.00 advance payment or that he would have sought a fee waiver in this amount. *Id.* at *9. Accordingly, the Court found that Defendants had not established that EOUSA and USAO-MA had conducted an adequate or reasonable search for responsive records. *Id.*

Defendants filed a motion for renewed dispositive briefing, which the Court granted. Shortly thereafter, Mr. Marino filed a Motion for Fee Waiver, Dkt. 29. He asked the Court to order Defendants to "correct" the "[v]erdict [s]heet" from his "jury trial" and waive $5,796.00 in search fees.[3] *Id.* at 14-15. The Court directed Defendants to treat Mr. Marino's Motion as a request made directly to them. *See* Dec. 30, 2013 Minute Order.

On February 10, 2014, Mr. Marino filed a Motion to Compel, Dkt. 30, and a Motion Requesting Copy of Docket Sheet, Dkt. 31. Mr. Marino asked the Court to direct Defendants to respond to his fee waiver request, Mot. to Compel at 1, and renewed his request for a "correct[ion] [of] the . . . [i]naccurate [r]ecord[s]" from his trial in the District of Massachusetts, Mot. Requesting Copy of Docket Sheet at 2. The Court granted the Motion to Compel and ordered Defendants to respond no later than March 5, 2014. *See* Feb. 12, 2014

---

[3] The Court notes that, in the same paragraph in which he asked for a fee waiver, Mr. Marino also requested an order that would "allow [him] to pay the $5,796.00 within 60 days from this Court's Order . . . ." Mot. for Fee Waiver at 15. The Court presumes that this request is borne out of a misunderstanding of the law and is not a concession as to Mr. Marino's capability and willingness to pay the accrued search fees.

Minute Order. However, the Court granted Mr. Marino's Motion Requesting Copy of Docket Sheet only in part. It directed the Deputy Clerk to mail a copy of the docket sheet in this case to Mr. Marino and denied without prejudice his request for a correction of the records from his jury trial. *See* Feb. 12, 2014 Minute Order.

Defendants filed a timely response to Mr. Marino's Motion to Compel, submitting a declaration from Tricia Francis, an EOUSA Attorney-Advisor charged with responding to FOIA requests. *See* EOUSA Notice [Dkt. 32], Francis Decl. [Dkt. 32-1]. Ms. Francis averred that EOUSA had calculated that it would take approximately 207 hours to conduct a search for the records that Mr. Marino had requested, computed a fee estimate of $5,796.00 based on the agency's normal search fee of $28.00 per hour, and mailed this fee estimate to Mr. Marino in December 2013. Francis Decl. ¶¶ 5-7; *see also* Notice of Exhibits [Dkt. 37], Fee Letter to Mr. Marino [Dkt. 37-1] at 1-3. Ms. Francis adds that upon learning of Mr. Marino's Motion for a Fee Waiver, EOUSA evaluated his request and deemed Mr. Marino ineligible for a fee waiver. Francis Decl. ¶ 8. EOUSA notified Mr. Marino of its decision on January 16, 2014, *id.*, explaining that Mr. Marino had not sufficiently established that his FOIA request was in the public interest, *see* Notice of Exhibits, Jan. 16, 2013 Letter to Mr. Marino [Dkt. 37-1] at 4-5. EOUSA informed Mr. Marino that he could either notify EOUSA of the amount he was willing to pay or administratively appeal the denial of his waiver request. Francis Decl. ¶ 8; *see also* Jan. 16, 2013 Letter to Mr. Marino at 5.

Mr. Marino opted to appeal EOUSA's fee waiver denial. OIP received the appeal, but declined to act. *See* Resp. to Show Cause [Dkt. 38], Ex. 1 [Dkt. 38-1] (OIP Letter to Mr. Marino). On April 3, 2014, OIP informed Mr. Marino that it was closing his appeal pursuant to 28 C.F.R. § 16.9(a)(3) because his waiver request was part of the litigation he had brought

4

before this Court. *Id.* at 1. Section 16.9(a)(3) provides that "[a]n appeal ordinarily will not be acted on if the request becomes a matter of FOIA litigation." 28 C.F.R. § 16.9(a)(3).

On March 21, 2014, Mr. Marino filed a Reply, Dkt. 33, and Supplemental Reply, Dkt. 34, to EOUSA's Notice and Francis Declaration. The Court then entered an Order explaining that EOUSA's Notice would be construed as an opposition to Mr. Marino's Motion to Compel, and Mr. Marino's Reply and Supplemental Reply would "complete the record on [Mr. Marino's] eligibility for a fee waiver." Mar. 26, 2014 Minute Order. The Court vacated the existing schedule for summary judgment briefing pending the Court's determination of Mr. Marino's eligibility for a fee waiver.[4] Accordingly, the issue of Mr. Marino's eligibility for a fee waiver is now ripe.

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

At the outset, the Court finds that Mr. Marino has exhausted his administrative remedies in connection with his request for a fee waiver. It is well-established that a party must first exhaust his administrative remedies before bringing an action under FOIA. *Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985) (citing *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979)); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990). This principle also applies to waiver of search fees. As the D.C. Circuit has explained, "[e]xhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby*, 920 F.2d at 66 (citing *Nat'l Treasury Emps. Union v. Griffin*, 811 F.2d 644, 648 (D.C. Cir. 1987); *Irons v. FBI*, 571 F. Supp. 1241, 1243 (D. Mass. 1983); *Crooker v. U.S. Secret Serv.*, 577 F. Supp. 1218, 1219 (D.D.C. 1983)). Here, Mr. Marino

---

[4] On March 28, 2014, Mr. Marino submitted a Supplemental Motion for Fee Waiver, Dkt. 35, which the Court accepted.

appealed EOUSA's fee waiver denial to OIP, which closed the matter in light of the ongoing litigation. *See* OIP Letter to Mr. Marino at 1 (citing 28 C.F.R. § 16.9(a)(3)). Consequently, there is no barrier to this Court addressing Mr. Marino's eligibility for a fee waiver.

### B. Requested Fee Waiver

FOIA requesters generally cannot obtain judicial review of their FOIA claims until they either pay any fees associated with their records request or establish their entitlement to a fee waiver. *See Oglesby*, 920 F.2d at 66; *Smith v. Fed. Bureau of Prisons*, 517 F. Supp. 2d 451, 455 (D.D.C. 2007). Both fee schedules and fee waivers are governed by 5 U.S.C. § 552(a)(4)(A). Under that provision, agencies are "empower[ed] . . . to 'promulgate regulations . . . specifying the schedule of fees applicable to the processing of [FOIA] requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced.'" *Research Air, Inc. v. Kempthorne*, 589 F. Supp. 2d 1, 8-9 (D.D.C. 2008) (alterations in original) (quoting 5 U.S.C. § 552(a)(4)(A)(i)). The statute also directs agencies to waive fees for processing a FOIA request when "[1] disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and [2] is not primarily in the commercial interest of the requester." *Id.* at 8 (alterations in original) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). Accordingly, a court must consider both the statute and the regulations promulgated by the agency when determining whether a fee waiver request was denied properly. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 35 (D.C. Cir. 1998); *VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55, 58-59 (D.D.C. 2002).

Although the Court's review of a fee waiver denial is *de novo*, it is limited to the record that was before the agency at the time of the request. *See Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988). Plaintiffs bear the burden of demonstrating that the requirements for a

fee waiver are satisfied.  *See id.*  However, because Mr. Marino is proceeding *pro se*, the Court will construe his request for a fee waiver liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004).

As a component of the Department of Justice, EOUSA properly applied the Department's regulations governing fee waivers set forth in 28 C.F.R. § 16.11(k).  That provision requires the furnishing of responsive records "without charge or at a [reduced] charge . . . where a component determines, based on all available information, that the requester has demonstrated" the requisite level of public interest and is not seeking the information primarily for a commercial interest.  28 C.F.R. § 16.11(k)(1).  EOUSA determined that Mr. Marino had not satisfied the first requirement of a public interest, which involves consideration of the following four factors:

> (i) The subject of the request: Whether the subject of the requested records concerns 'the operations or activities of the government.' The subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated.
>
> (ii) The informative value of the information to be disclosed: Whether the disclosure is 'likely to contribute' to an understanding of government operations or activities.  The disclosable portions of the requested records must be meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities.  The disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not be as likely to contribute to such understanding where nothing new would be added to the public's understanding.
>
> (iii) The contribution to an understanding of the subject by the public likely to result from disclosure: Whether disclosure of the requested information will contribute to 'public understanding.'  The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A

7

>  requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media will satisfy this consideration.
>
>  (iv) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute 'significantly' to public understanding of government operations or activities. The public's understanding of the subject in question, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent. Components shall not make value judgments about whether information that would contribute significantly to public understanding of the operations or activities of the government is 'important' enough to be made public.

*Id.* § 16.11(k)(2). As the Circuit has explained, "[f]or a request to be in the 'public interest,' [all] four [public interest] criteria must be satisfied." *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).

EOUSA denied Mr. Marino's fee waiver request because he had not satisfied all of the factors of the public interest analysis. In its letter to Mr. Marino, EOUSA faulted him for (1) not explaining with sufficient specificity to which operations or activities of the government his records request pertained, (2) failing to detail how his records request would significantly increase public understanding of government operations or activities, and (3) not providing an adequate plan for disseminating the requested records to the public. *See* Jan. 16, 2013 Letter to Mr. Marino at 4-5. The Court agrees as to the latter two points.

While Mr. Marino's briefing is often difficult to follow, his position is clear that the records he requests will reveal information about the inner workings of the FBI, and, perhaps, U.S. Attorneys' Offices. However, Mr. Marino has not specifically stated how disclosure of such records would add anything new to the public's understanding of these federal entities, which is the primary goal of FOIA. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of*

8

*Press*, 489 U.S. 749, 774 (1989) ("'[T]he basic purpose of the [FOIA is] to open agency action to the light of public scrutiny.'" (alterations in original) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)); *see also Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 22-23 (D.D.C. 2011) ("Congress enacted FOIA to promote transparency across the [federal] government."). Mr. Marino contends that the requested records will expose corruption within the FBI, Mot. for Fee Waiver at 6, and reveal a "super secret [FBI] program called 'TOP ECHELON INFORMANT PROGRAM' which recruits top level criminals in the policy making of criminal organized syndicates . . . or gangs," Reply at 2.[5] Any such records, however, would not contain new information. As Mr. Marino notes, "[t]he federal courts are by now painfully familiar with the Winter Hill Gang[, whose leaders were James "Whitey" Bulger and Stephen "the Rifleman" Flemmi,] and its corrupt relationship with the Boston [o]ffice of the FBI [and] the United States Attorney's Office [for the] District of Massachusetts." Mot. for Fee Waiver at 11-12 (citing, *inter alia*, *McIntyre v. United States*, 367 F.3d 38 (1st Cir. 2004) (suit brought against the United States by estates of two murdered individuals under the theory that certain FBI agents' illicit cooperation with Bulger and Flemmi resulted in the murders); *United States v. Connolly*, 341 F.3d 16 (1st Cir. 2003) (prosecution of former FBI agent accused of conspiring with members of the Winter Hill Gang); *Flemmi*, 225 F.3d 78 (interlocutory appeal of district

---

[5] Mr. Marino also claims that the requested FOIA information will correct "inaccurate records" associated with his criminal conviction, Mot. for Fee Waiver at 3, and will cast doubt on the evidence presented at his trial, *id.* at 5. The Court notes that Mr. Marino's focus on the ways in which the requested records allegedly will undermine his conviction and term of incarceration greatly undercuts the supposed benefit that will accrue to the *public* if the records are released. *See* Supp. Reply at 4-5 (explaining that the requested records are needed in order to secure Mr. Marino's "immediate release from custody"). As this Circuit has observed, "[i]nsofar as [a prisoner] seeks information to facilitate a challenge to his conviction, the court considers disclosure less likely to contribute to public understanding." *Ortloff v. Dep't of Justice*, No. 02-5170, 2002 WL 31777630, at *1 (D.C. Cir. Dec. 11, 2002) (per curiam) (citing *McClain v. U.S. Dep't of Justice*, 13 F.3d 220, 221 (7th Cir. 1993); *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1287 (9th Cir. 1987)).

court's holding that the United States could not introduce certain evidence at trial because Flemmi had received use immunity in return for serving as an FBI informant)). Mr. Marino also notes that Congress has examined the FBI's use and management of informants affiliated with the Mafia. *Id.* at 12-13 (citing Staff of H. Comm. on Gov't Reform, 108th Cong., Everything Secret Degenerates: The FBI's Use of Murderers as Informants, H.R. Rep. No. 108-414 (Comm. Print 2004)); *see also* Supp. Mot. for Fee Waiver at 5. Accordingly, Mr. Marino has virtually conceded EOUSA's first two findings. *See Campbell*, 164 F.3d at 36 (knowing where "in the public domain . . . materials reside" is necessary because "the mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further public understanding within the meaning of the fee waiver provisions") (citations and internal quotation marks omitted).

Mr. Marino's vague statements about disseminating the information are similarly tenuous. A key consideration in evaluating a public interest fee-waiver request is whether the FOIA requester has the "ability and intention to effectively convey or disseminate the requested information to the public." *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006) (internal quotation marks and citation omitted). Such an inquiry "look[s] to the scope of the requester's proposed dissemination—whether to a large segment of the public or a limited subset of persons." *Id.* (internal quotation marks and citations omitted). It also considers whether the FOIA requester has "described in reasonably specific and non-conclusory terms his ability to disseminate the requested information." *Perkins v. U.S. Dep't of Veterans Affairs*, 754 F. Supp. 2d 1, 8 (D.D.C. 2010).

Here, Mr. Marino indicates that he will disseminate any responsive records on the Internet. He specifically names the following websites as platforms for distribution:

"PROJECTMARINO.COM, PROJECTMARINO.NET, PROJECTMARINOgmail.com, . . . Face Book [sic], Twitter, U-Tube [sic], [and] Google." Reply at 18. The only data he provides on viewership of these websites is that "over 150,000 people WORLD-WIDE" have visited "PROJECTMARINO." *Id.* at 22 (internal quotation marks omitted).

        The accuracy and utility of this response is questionable. Mr. Marino does not explain which PROJECTMARINO web site has been viewed, and makes the fantastical assertion that "the White House [has] view[ed] the websites from three different terminals." *Id.* at 23. Further, Mr. Marino does not explain whether the 150,000 figure represents merely the total number of views since the inception of the websites or the number of website hits per day. *Cf., e.g.*, *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003) (rejecting argument that plaintiff had not sufficiently demonstrated its intent to disseminate records it had requested in light of plaintiff's stated plan of communicating the records requested through such platforms as a newsletter with a monthly circulation of over 300,000 copies nationwide, a website that had logged up to 1,000,000 visitors in a single day, and a daily listserv with over 60,000 subscribers); *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 110 (D.D.C. 2008) (determining plaintiff had sufficiently described the methods it would use to disseminate FOIA information, noting that plaintiff claimed its website and related sites received over 55,000 hits per day and 1.6 million hits per month). Further, Mr. Marino has not explained how he would post the records that he seeks to these various websites while incarcerated. He has provided no information whatsoever regarding his access to these specific websites or even to the Internet generally. Mr. Marino, in short, simply has not demonstrated his ability to "effectively convey" the requested information to the public. *See Prison Legal News*, 436 F. Supp. 2d at 26.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Mr. Marino's request for a search fee waiver. A memorializing Order accompanies this Memorandum Opinion.

Date: June 19, 2014

/s/
ROSEMARY M. COLLYER
United States District Judge