**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VINCENT MICHAEL MARINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  12-865 (RMC) |
| | ) |
| DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION

Plaintiff Vincent Michael Marino challenges the adequacy of the responses to his FOIA and Privacy Act requests that he sent to the Department of Justice and various constituent agencies of the DOJ.  The Court will grant summary judgment in favor of Defendants because they properly and adequately responded to Mr. Marino's requests.

## I. FACTS

### A.  Background

Mr. Marino is imprisoned at Federal Correctional Institution (FCI) McDowell in West Virginia, Compl. [Dkt. 1] at 2, after convictions in the U.S. District Court for the District of Massachusetts for racketeering, conspiracy to murder in aid of racketeering, and drug possession, *see United States v. Marino*, 277 F.3d 11 (1st Cir. 2002); Mot. [Dkt. 79] at 2-3.  A repeat litigator, Mr. Marino now sues several components of DOJ under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Privacy Act of 1974, *id*. § 552a.  Specifically, Mr. Marino names: the Criminal Division of the Department of Justice (CRIM); the Executive Office of the U.S. Attorneys (EOUSA); the Federal Bureau of Investigation (FBI); the Office of Enforcement

Operations (OEO)[1]; and the U.S. Attorney's Office for the District of Massachusetts (USAO-MA).[2]  Compl. at 2.  Mr. Marino seeks records that allegedly demonstrate his actual and legal innocence of the "Salemme attempted murder," racketeering convictions, and drug convictions, including records from meetings allegedly held by Assistant U.S. Attorneys (AUSAs) to achieve a "potential out of court settlement" that "facilitated FRAUD [sic] upon the Federal Grand Jury [sic]."  *Id*. at 3-4.  Mr. Marino claims that these records show "egregious governmental misconduct, due process violations, . . . governmental impediments," and violations of his rights to exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  Compl. at 3.

### B. Mr. Marino's Records Requests

From 2011 to 2012, Mr. Marino sent numerous letters to Defendants requesting multiple records.  Defendants designated these letters as follows: FOIA Request No. CRM-201200185P; FOIA Request No. 2011-2085; FOIA Request No. 2011-2968; FOIA Request No. 2011-2969; and FOIA Request No. 2011-3089.  Many of the requests overlapped and nearly all sought at least one of the following types of records: sealed records from *United States v. Salemme*, 91 F. Supp. 2d 141 (D. Mass. 1999), *rev'd in part*, *United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000), a criminal matter not involving Mr. Marino; FBI recordings regarding the Salemme attempted murder; verdict forms from Mr. Marino's criminal prosecutions; and records relating to Mr. Marino generally.

---

[1] OEO is a section operating within CRIM.

[2] Mr. Marino's Complaint also alleged violations by the Office of Attorney General, the United States Attorney's Office for the District of Columbia, and the Office of Information and Policy.  *See* Compl.  This Court dismissed those defendants on February 2, 2015.  *See* Order [Dkt. 66].

### 1.   FOIA Request No. CRM-201200185P

On March 2, 2012, CRIM received a letter from Mr. Marino dated February 20, 2012.  Declaration of Kenneth W. Courter, Jr. ("Courter Decl.") [Dkt. 14-4] ¶¶ 5-6.  As relevant, the letter requested:

> any & all records, documents, memoranda, statements, reports, & other information or data in whatever form, maintained by your agency that relates to and/or makes reference to [Mr. Marino], directly or indirectly, more specifically [Mr. Marino], requests the (Under Seal Documents) described in *U.S. v. Salemme*, 91 F.Supp.2d [sic] pages 267-269 (D.Mass.1999) [sic] which shows that FBI publicly known informants Angelo "Sonny" Mercurio, James "Whitey" Bulger & Stephen "The Rifleman" Flemmi called Salemme to a location in June 16, 1989 to be shot while all three informants worked for convicted FBI agent Connolly.

Courter Decl., Ex. 1[Dkt. 14-4] at 1.  Mr. Marino also asked that any queries for responsive records include his aliases, which he listed as "Vincent Michael Portalla" and "Gigi."  *Id*. at 2.  These requests were made pursuant to FOIA and the Privacy Act.  CRIM construed the letter as a request for records relating to Mr. Marino's U.S. District Court for the District of Massachusetts criminal matter, Case No. 4:97-40009.  Courter Decl. ¶ 5.  CRIM designated the letter as FOIA Request No. CRM-201200185P and performed a search for responsive records using the terms "Marino, Vincent Michael," and "Marino, Vincent."  Courter Decl. ¶¶ 5, 7.  No responsive records were found and CRIM notified Mr. Marino of the search results on May 14, 2012.  Courter Decl. ¶ 8; *see id.*, Ex. 2 [Dkt. 14-4].

After the instant litigation commenced, CRIM conducted additional searches for records responsive to Mr. Marino's February 20, 2012 request.  CRIM searched the records of the Electronic Surveillance Unit of OEO and the Organized Crime and Gang Section (OCGS).  Courter Decl. ¶ 9.  Using Mr. Marino's last name and, this time, his aliases, CRIM searched one of ESU's electronic databases and one of its shared computer drives.  Courter Decl. ¶¶ 10-11, 13-

14.  Similarly, CRIM searched OCGS's four electronic databases with a query using the search terms "Vincent Marino," "Vincent Michael Marino," "Vincent Portalla," "Vincent Michael Portalla," and "Gigi."  Courter Decl. ¶¶ 15-17.  It also searched the physical files of ESU and OCGC.  Courter Decl. ¶¶ 12, 18.  In these searches, CRIM located a total of seventeen pages of records.  Courter Decl. ¶¶ 11, 14, 17.

CRIM processed the responsive records found in its second search, and on March 15, 2013, sent a letter to Mr. Marino informing him of the search results.  Courter Decl. ¶ 19; *see id.*, Ex. 3 [Dkt. 14-4].  Out of the seventeen pages of responsive records, CRIM released to Mr. Marino one page in full and seven pages in part, and withheld nine pages in full pursuant to FOIA Exemptions 5, 6, and 7(C).  Courter Decl. ¶ 19.

Following this Court's November 12, 2013 Opinion and Order [Dkt. 24, 25], CRIM performed an additional search for records related to the *Salemme* case, which mentioned Mr. Marino.  Declaration of John E. Cunningham III ("Cunningham Decl.") [Dkt. 79-9] ¶ 10.  CRIM personnel located the closed case file from *U.S. v. Salemme*, File No. 123-36-308, and processed and reviewed the records responsive to Mr. Marino's requests.  *Id.* ¶ 11; Ex. 1 [Dkt. 79-6].  CRIM located only one record within the *Salemme* file that was responsive to Mr. Marino's request and, by a letter dated January 13, 2014, the record was produced to Mr. Marino.  *See* Ex. 1.

**2.  Records Request to FBI**

Mr. Marino sent a letter to the FBI dated February 20, 2012.  Declaration of David M. Hardy ("Hardy Decl.") [Dkt. 14-3] ¶ 5.  As with his request to CRIM, Mr. Marino relied on FOIA and the Privacy Act to ask for the sealed records from the *Salemme* prosecution and records generally relating to Mr. Marino and his aliases.  Hardy Decl., Ex. A [Dkt. 14-3] at

2-3.  Construing Mr. Marino's letter only as a request for sealed court documents, FBI responded

on April 12, 2012, that it did not maintain the records Mr. Marino sought.  FBI advised Mr.

Marino to direct his requests for sealed records to EOUSA.  *See* Hardy Decl., Ex. B [Dkt. 14-3].

Following this Court's November 12, 2013 Opinion and Order, FBI expanded the

scope of its search.  Second Declaration of David M. Hardy ("2nd Hardy Decl.") [Dkt. 79-4]

¶ 13.  FBI "conducted a search of the [Central Record System] CRS to identify all potentially

responsive files indexed to plaintiff," "using a six-way phonetic breakdown" of Mr. Marino's

full name.  *Id.*  The search also included Mr. Marino's alias, Gigi Portalla.  *See id.*  The FBI

located records which were previously produced to Mr. Marino pursuant to an earlier FOIA

request and, therefore, the records were not reproduced.  *See id.*; *see generally Marino v. CIA*,

Civil Case No. 11-813, 2012 WL 4482986 (D.D.C. Sept. 28, 2012), *aff'd*, 2013 WL 5975000

(D.C. Cir. Oct. 21, 2013).  There is no indication in Mr. Hardy's Second Declaration or in the

briefing that FBI informed Mr. Marino no additional records were located.

### 3.  FOIA Request Nos. 2011-2085, 2011-2968, 2011-2969, 2011-3089

Over the course of approximately ten months, Defendants received a combined

total of ten letters from Mr. Marino.  EOUSA grouped these letters under four FOIA numbers.

The letters dated May 16, 2011, June 16, 2011, June 22, 2011, July 6, 2011, July 7, 2011, and

March 6, 2012, were designated as FOIA Request No. 2011-2085.  The letter dated May 31,

2011, and the two letters both dated July 12, 2011, were designated as FOIA Request No. 2011-

3089.  Finally, EOUSA split the letter dated August 15, 2011, into two requests: FOIA Request

Nos. 2011-2968 and 2011-2969.  Declaration of Kathleen Brandon ("Brandon Decl.") [Dkt. 15-

1] ¶¶ 4-8.

Although EOUSA did not group the letters by subject, each letter from Mr. Marino sought at least one of four types of records. The letters dated May 16, 2011, May 31, 2011, and June 16, 2011, asked for records under FOIA and the Privacy Act pertaining to Mr. Marino that concerned "paranormal, esoteric phenomena events in the Federal Bureau of Prisons" or the "implantation of electronic devices" in his body. *See* Brandon Decl., Ex. A [Dkt. 15-1] at 1; *id.*, Ex. B [Dkt. 15-1] at 1; *id.*, Ex. G [Dkt. 15-2] at 1. The letter dated July 6, 2011, and one of the letters dated July 12, 2011, requested records under FOIA concerning Mr. Marino or his aliases as well as "the December 22, 1999 'Verdict Sheet'" from his Massachusetts District Court criminal trial, Case No. 4:97-40009. *Id.*, Ex. D [Dkt. 15-1] at 1-2; *id.*, Ex. H [Dkt. 15-2] at 1-2. These letters also asked for certain corrections to the verdict sheet pursuant to the Privacy Act. *Id.*, Ex. D [Dkt. 15-1] at 1-2; *id.*, Ex. H [Dkt. 15-2] at 1-2. The letter dated August 15, 2011, sought records under FOIA and the Privacy Act relating to Mr. Marino that involved DOJ's designation of him as a "terrorist, a member of a militia, or a sovereign citizen." Brandon Decl., Ex. J [Dkt. 15-3] at 1-2. Finally, each of the letters dated June 22, 2011, July 7, 2011, and March 6, 2012, as well as the other July 12, 2011 letter, made the same FOIA and Privacy Act requests as those submitted to CRIM and FBI: the sealed documents from the *Salemme* prosecution and records generally relating to Mr. Marino or his aliases. *Id.*, Ex. C [Dkt. 15-1] at 1-2; *id.*, Ex. E [Dkt. 15-1] at 2-3; *id.*, Ex. F [Dkt. 15-2] at 1-2; *id.*, Ex. I [Dkt. 15-3] at 2-3.

EOUSA responded to Mr. Marino on July 13, 2012, with a letter that informed him that his requests were insufficient to identify the sealed documents he sought from *Salemme*. EOUSA explained that the pages he cited "contain[ed] references to multiple documents that may or may not be under seal." Brandon Decl., Ex. K [Dkt. 15-3] at 1. To make its records search "meaningful," EOUSA asked Mr. Marino to "provide a citation to the specific record"

that he sought.  *Id.*, Ex. K at 1.  Mr. Marino answered on July 24, 2012, with a list of: specific

pages and exhibits from *Salemme*; citations to other decisions, including his own cases; and a file

number for four FBI tapes from 1989 concerning the *Salemme* attempted murder.  *Id.*, Ex. L

[Dkt. 15-3] at 2.  Mr. Marino told EOUSA that he was "willing to pay all costs up to $1000.00 to

receive" the records he had requested.  *Id.*, Ex. L at 2.

>  EOUSA then directed USAO-MA to search for records responsive to Mr.

Marino's requests.  Admittedly confused by the scope of Mr. Marino's requests, USAO-MA,

with the assistance of the AUSA who had prosecuted Mr. Marino, conducted a search for

responsive records.  An approximately two-hour search yielded three file cabinets, thirty-five

boxes, and approximately 72,000 electronic files containing potentially responsive records.

Brandon Decl. ¶¶ 12-14.

>  EOUSA wrote again to Mr. Marino on November 20, 2012, updating him on its

search.  EOUSA reported the volume of records that its initial search had uncovered, and

estimated that completing the search would require approximately 320 hours.  Based on a search

time fee of twenty-eight dollars per hour, EOUSA estimated the total cost of the search to be

$8,960.00.  It asked Mr. Marino to remit a check or money order for this amount, narrow his

request, or specify the amount he was willing to pay (in which case EOUSA would only process

records up to that amount).  Brandon Decl., Ex. M [Dkt. 15-3] at 1.

>  On December 17, 2012, EOUSA received a request from Mr. Marino for a fee

waiver.  Defs.' Statement of Facts ¶ 53.  Mr. Marino asserted that the records would show

"egregious governmental misconduct, due process violations [and] [would] serve[] as a

substantial public interes[t]."  Brandon Decl., Ex. N [Dkt. 15-3] at 10.  EOUSA denied this

request on January 16, 2013.  Defs.' Statement of Facts ¶ 54.  It informed Mr. Marino that, to

receive a waiver or reduction in fees, he had to "demonstrate that 'disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester.'"  Brandon Decl., Ex. O [Dkt. 15-4] (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  Based on the factors set forth in 28 C.F.R. § 16.11(k), EOUSA found that Mr. Marino did not qualify for a waiver or fee reduction.  It again directed him either to narrow his request or designate the amount of money he was willing to pay.  EOUSA concluded its letter by informing Mr. Marino that he could appeal its decision within sixty days of the date of the letter, and that failure to respond within thirty days would result in closure of his FOIA and Privacy Act requests.  Brandon Decl. ¶ 18.

On January 17, 2013, and February 10, 2013, Mr. Marino appealed the denial of his fee waiver request.  Brandon Decl., Ex. P [Dkt. 15-4]; *id.*, Ex. R [Dkt. 15-4].  He sent one letter directly to Office of Information Policy (OIP), the DOJ component that handles FOIA administrative appeals, *see* 28 C.F.R. § 16.9(a), and another to EOUSA, which forwarded it to OIP, Brandon Decl. ¶ 20.

EOUSA administratively closed all four of Mr. Marino's FOIA requests on February 28, 2013, for failure to pay the search fee within thirty days of January 16, 2013.  Brandon Decl., Ex. Q [Dkt. 15-4].  Mr. Marino moved this Court to grant a fee waiver but that motion was denied on June 19, 2014.  *See* Mot. for Fee Waiver [Dkt. 29]; Supp. Mot. for Fee Waiver [Dkt. 35]; Fee Waiver Opinion [Dkt. 39]; Fee Waiver Order [Dkt. 40].  On or about November 24, 2014, EOUSA received a check from Mr. Marino in the amount of $8,960.00, which covered the entire anticipated cost of the search and review of the remaining potentially responsive records.  *See* Defs.' Notice to the Court [Dkt. 68].

Following receipt of Mr. Marino's payment, EOUSA and USAO-MA reviewed additional records.  Between February 2015 and June 2015, a paralegal specialist at USAO-MA reviewed the following:  (1) records from *United States v. Salemme*, Case No. 94-cr-10287-MLW; (2) records from *United States v. Connolly*, Case No. F01-cr-8287D; (3) results from a docket search for cases involving Jody Wampler; and (4) records from *United States v. Marino*, Case No. 97-cr-40009-NMG.  *See* Declaration of Susanne Husted ("Husted Decl.") [Dkt. 79-8] ¶¶ 16-19.  On May 8, 2015, EOUSA responded on behalf of EOUSA and USAO-MA, informing Mr. Marino that 156 pages were being released in full, 3 pages were deemed non-responsive, 29 pages were withheld in full, and 64 pages were referred to the FBI for review.[3]  *See* Declaration of David Luczynski ("Luczynski Decl.") [Dkt. 79-3] ¶ 6.  As a basis for withholding the 29 pages, the letter listed FOIA exemptions (b)(6), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2).  *See id*.

### C.  The Instant Litigation

On May 29, 2012, Mr. Marino filed the Complaint in this case alleging that the DOJ and its components (EOUSA, FBI, CRIM, OEO, USAO-MA) failed to satisfy their obligations under FOIA and the Privacy Act by inadequately responding to his record requests and withholding relevant records.  *See* Compl.  Mr. Marino's Complaint seeks some, but not all, of the records he originally requested.  The Complaint alleges FOIA and Privacy Act violations based on Defendants' refusal to release the sealed records from *Salemme*, the verdict forms from Mr. Marino's criminal case, the four FBI tapes from 1989 concerning the Salemme attempted murder, and records generally relating to Mr. Marino by name or one of his aliases.  *See id*.

---

[3] After reviewing the 64 pages, the FBI informed Mr. Marino via letter on July 13, 2015 that the pages were non-responsive.  *See* Luczynski Decl. ¶ 6; Ex. C [Dkt. 79-1].

On October 28, 2015 Defendants filed a Renewed Motion for Summary Judgment.  *See* Mot. [Dkt. 79].  On December 10, 2015, Mr. Marino filed a timely Opposition to Defendants' Motion for Summary Judgment.  *See* Opp'n [Dkt. 82].  On December 11, 2015, Mr. Marino filed two Supplemental Memorandums in support of his Opposition.  *See* 1st Supp. [Dkt. 83]; 2nd Supp. [Dkt. 84].  On February 4, 2016, Defendants filed a timely Reply to Plaintiff's Opposition.  *See* Reply [Dkt. 88].  Mr. Marino also filed a Motion to Compel on October 28, 2015.  *See* Mot. to Compel [Dkt. 80].

## II. LEGAL STANDARD

### A.  FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.  *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd*, *Sanders v. Dep't of Justice*, Civ. No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011).  The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not whether other responsive records may exist, but whether the search itself was adequate.  *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, an agency must show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)).  Agencies

are not required to search every record system, but agencies must conduct a good faith,

reasonable search of those systems of records likely to possess the requested records.  *Oglesby v.*

*Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d

1172 (D.C. Cir. 1996).  An agency may prove the reasonableness of its search by a declaration

by responsible agency officials, so long as the declaration is reasonably detailed and not

controverted by contrary evidence or evidence of bad faith.  *Military Audit Project v. Casey*, 656

F.2d 724, 738 (D.C. Cir. 1981).  Once an agency has provided such affidavits, the burden shifts

to the plaintiff to demonstrate the lack of a good faith search.  *See Maynard v. CIA*, 986 F.2d

547, 560 (1st Cir. 1993).  If a review of the record raises substantial doubt as to the

reasonableness of a search, especially in light of "well-defined requests and positive indications

of overlooked materials," then summary judgment may be inappropriate.  *Founding Church of*

*Scientology of Washington, D.C., Inc. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

### B.  Privacy Act

The Privacy Act "safeguards the public from unwarranted collection,

maintenance, use and dissemination of personal information contained in agency records by

allowing an individual to participate in ensuring that his records are accurate and properly used."

*Henke v. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (internal quotations and

citations omitted).  "To that end, the Act requires any agency which maintains a 'system of

records' to publish at least annually a statement in the Federal Register describing that system."

*Id.*; 5 U.S.C. § 552a(a)(5).  The Privacy Act ensures that an individual can access his or her

records and request amendment of those records to correct any inaccuracies.  5 U.S.C.

§ 552a(d)(1)-(3).  A civil action is available to correct an inaccurate record that an agency has

refused to amend or an individual request with which an agency has not complied.  5 U.S.C.

§ 552a(g)(1)(A)-(B).  While the Privacy Act generally permits the correction of facts, it does not allow for the "correction of opinions or judgments."  *McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006) (internal quotations and citations omitted).

### C.  Motion for Summary Judgment

Defendants contend that there is no genuine dispute as to any material fact and that they are entitled to summary judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981).  In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project*, 656 F.2d at 738; *see also Vaughn v. Rosen*, 484 F.2d

820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld record, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements.  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

### III. ANALYSIS

### A.  FOIA Claim

#### 1.  Defendants Made Good Faith Efforts to Search for Requested Records

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  An agency moving for summary judgment in a FOIA case must first demonstrate that it made a good-faith effort to search for responsive materials in a manner "reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  Where an agency affidavit avers that a reasonable search was conducted, the agency is entitled to such a presumption of good faith.  *Defenders of Wildlife v. Dep't of Interior,* 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  An affidavit can be rebutted only when inadequate on its face or with evidence that the agency's search was not made in good faith.  *Id.*  A plaintiff cannot rebut the good faith presumption that attaches to an agency's affidavit "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. Dep't of Justice*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010).  Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search.  *Oglesby*, 920 F.2d at 67.

*i.   CRIM/OEO*

Mr. Marino challenges that adequacy of CRIM/OEO's search for records based on the evidence that only one additional responsive record was located in a search of the *Salemme* file.  Mr. Marino argues that due to the length and intricacy of that trial it is unlikely only one responsive record would be located and, therefore, the search could not have been made in good faith.  The undisputed facts indicate that CRIM/OEO searched the electronic surveillance unit database, the shared drive used by CRIM personnel, databases used by the organized crime and gang section, and the closed *Salemme* file for any mention of Mr. Marino, including aliases.  *See* supra 3-4.  Based on Mr. Marino's request for any records related to him or his criminal cases, the searches conducted by CRIM were "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351.  Mr. Marino has only argued unsupported conclusions and hypothetical scenarios to dispute the adequacy of the search; these are not sufficient to overcome the presumption of good faith.  *See Brown*, 742 F. Supp. 2d at 129; *Oglesby*, 920 F.2d at 67.

*ii.   FBI*

Mr. Marino does not specifically dispute the adequacy of the FBI's search and this Court also finds no reason to question its reasonableness.  The Hardy declaration explains that the types of records sought by Mr. Marino are not maintained by the FBI and that Mr. Marino was informed to direct his request to EOUSA.  *See* Hardy Decl., Ex. B [Dkt. 14-3].  The FBI did, however, search its central records system indices for phonetic variations of Mr. Marino's name and aliases and found no responsive records, other than those already provided to Mr. Marino during previous FOIA requests.  *See* supra at 5.  Mr. Marino does not raise any specific arguments about the adequacy of the search conducted by FBI.  Therefore, the Court treats the argument as conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,

284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff

files an opposition to a dispositive motion and addresses only certain arguments raised by the

defendant, a court may treat those arguments that the plaintiff failed to address as conceded."),

*aff'd sub nom. Hopkins v. Women's Div., Gen. Bd. of Global Ministries, United Methodist

Church*, 98 F. App'x 8 (D.C. Cir. 2004).  In addition, based on this Court's review of the

declarations provided by the FBI, the search was reasonable and conducted in good faith.

### iii.    USAO-MA/EOUSA

Mr. Marino also challenges the reasonableness of the searches conducted by

USAO-MA and EOUSA due to the fact that out of the extremely large number of boxes and

records searched, the agencies only determined 156 pages of records were responsive.  *See*

Opp'n at 29.  The USAO-MA located, searched, and reviewed the following to locate records

responsive to Mr. Marino's FOIA requests:  (1) records in *United States v. Salemme*, Case No.

94-cr-10287-MLW; (2) records in *United States v. Connolly*, Case No. 99-cr-10428-JLT; (3)

records in *United States v. Connolly*, Case No. F01-cr-8287D; (4) a docket search for entries

related to Jodi Wampler; and (5) records in *United States v. Marino*, Case No. 97-cr-40009-

NMG.  *See* Husted Decl. ¶¶ 16-18 [Dkt. 79-1].  USAO-MA provided all relevant records to

EOUSA, where the records were again reviewed and 156 pages were deemed responsive and

released to Mr. Marino.  *See* Luczynski Decl. ¶ 6.  EOUSA did not conduct an independent

search for records because all relevant case records are maintained at the office responsible for

prosecuting the case.  *See* Luczynski Decl. ¶ 7.

Because Defendants have asserted in a sworn affidavit that a reasonable search

was conducted of files where responsive records would most likely be located, *see* Mot. at 7;

Husted Decl.; Luczynski Decl., Defendants are entitled to a presumption of good faith.

*Defenders of Wildlife*, 314 F. Supp. 2d at 8.  Based on Mr. Marino's request, the searches

conducted by USAO-MA were "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.  Mr. Marino's argument that the limited number of pages actually produced demonstrates the search was unreasonable and inadequate is a mere conclusion without support and does not overcome the presumption of good faith.  *See Brown*, 742 F. Supp. 2d at 129; *Oglesby*, 920 F.2d at 67.

The Court finds all Defendants have demonstrated reasonable searches were conducted in response to Mr. Marino's FOIA requests.

### 2.  Defendants Properly Withheld Plaintiff's Requested Responsive Records

To prevail on summary judgment in a FOIA action, Defendant must also demonstrate that the information withheld from disclosure is exempt and that the agency segregated non-exempt materials.  *See* 5 U.S.C. § 522(a)(4)(B), (b).  An agency may satisfy this burden by providing "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both." *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (internal quotations and citations omitted).  *See also Vaughn*, 484 F.2d 820.  Each defendant has satisfied this burden.

#### i.  CRIM/OEO

CRIM located 17 pages of responsive records and released one page in full, seven pages in part, and withheld nine pages.  *See* Mot. at 14.  CRIM also produced a comprehensive *Vaughn* index identifying the exemptions claimed for each record, specifically Exemptions (b)(5), (b)(6), and (b)(7)(C).  *See* Courter Decl., Ex. 4 [Dkt. 14-4].  CRIM's decision to withhold records was fully consistent with the stated FOIA Exemptions.

FOIA Exemption (b)(5) protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5).  This exemption has been construed by the Supreme Court to encompass all records "normally privileged in the civil discovery context," including attorney work product and attorney client communications.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

Exemption (b)(5) protects records covered by the deliberative process privilege— i.e., "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated"—in order "to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government."  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotations and citations omitted).  The deliberative process privilege "'protect[s] the decision-making processes of government agencies' and 'encourage[s] the frank discussion of legal and policy issues' by ensuring that agencies are not 'forced to operate in a fishbowl.'"  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. Dep't of Health and Human Servs.,* 839 F.2d 768, 773 (D.C. Cir. 1988)).

Exemption 5 also protects records that are attorney work product, "shield[ing] materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997)).

CRIM withheld Documents 9, 10, and 11 under the deliberative process and work product protections of Exemption 5, explaining that the records pertain to ongoing investigations and litigation strategy.  Courter Decl. ¶ 24.  The records are described as "part of a back and forth development of investigative and litigation strategy as it relates to obtaining approval to

make a request to a federal court for electronic surveillance." *Id*.  CRIM argues that "[d]isclosure of [these] draft documents would severely hamper the efficient day-to-day, internal workings of the Criminal Division, as individuals would no longer feel free to candidly present their views, ideas, and advice on investigative and litigation strategy." *Id*.

FOIA Exemption 5 is a proper justification to withhold the aforementioned records because they "enhance[d] the quality of agency decisions by protecting open and frank discussion."  5 U.S.C. § 552(b)(5).  If draft documents reflecting advice on investigation and litigation strategies were released to the public, lawyers and investigators in the Criminal Division would, in the future, be less likely to be explicit, open, and communicative, ultimately leading to inefficiency or plain lack of success.  *See Klamath Water Users Protective Ass'n*, 532 U.S. at 9; *Mapother* 3 F.3d at 1537.

In addition, Documents 9, 10, and 11 include legal strategies, interpretations, and opinions of Department of Justice attorneys with regard to the facts of the investigation and criminal prosecution of Mr. Marino.  Courter Decl. ¶¶ 27-29.  CRIM's description of the nature of the records is sufficiently detailed for the Court to find that they were properly withheld as attorney work product.  *See* J*udicial Watch*, 432 F.3d at 369 (permitting withholding of records prepared in anticipation of litigation).

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The term 'similar files' is broadly interpreted, such that Exemption 6 protects from disclosure all information that 'applies to a particular individual' in the absence of a public interest in disclosure."  *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).

The threshold is "fairly minimal," and "[a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Washington Post Co. v. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *Washington Post*, 456 U.S. at 602) (internal quotation marks omitted).

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted); *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). The privacy interest at stake belongs to the individual, not the agency. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest. To satisfy, the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Courts apply a balancing test to determine whether disclosure is exempt under 7(C). Courts "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotations and citations omitted).

With respect to the Court's inquiry into the privacy interests and public interests at stake, the analysis under Exemptions 6 and 7(C) is substantially similar. *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984); *see, e.g., Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while the public interest in disclosure of their identities is "insubstantial." *SafeCard Servs.*, 926 F.2d at 1205.  "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id*. at 1206; *see Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about 'what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).   If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Boyd v. Criminal Div. of the United States Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Favish*, 541 U.S. at 174).

CRIM redacted Documents 1, 2, 4, 5, 6, 7, and 8 under Exemptions 6 and 7(C) because they contain "the names and identifying information of DOJ attorneys, Criminal Division administrative support personnel, and third party individuals who were the subject of requests for electronic surveillance or were of investigative interest" during the investigation into Mr. Marino.  Mot. at 20 (citing Courter Decl. ¶¶ 33-36).  Mr. Marino argues that the records requested are of substantial public interest because they include potentially exculpatory evidence,

under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995), that should have been disclosed to Mr. Marino during his trial and that disclosing the records furthers the public interest of "revealing [ ] government misconduct." Opp'n at 18-23. Defendants respond that Mr. Marino has not met his initial burden of providing "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety[, here the withholding of *Brady* and *Kyles* information,] might have occurred." *Boyd*, 475 F.3d at 387. Mr. Marino relies on his own opinions to justify his public interest argument for disclosure of the withheld information.

The Court accepts CRIM's declaration that Documents 1, 2, 4, 5, 6, 7, and 8 contain names and identifying information of "investigators, personnel, targets, witnesses, and other [individuals]" and, thus, the personal privacy interests inherent in this information must be outweighed by the public interest in releasing such records. Mot. at 21 (citing Courter Decl. ¶¶ 33-36). The Court cannot set aside the "substantial" privacy interest of third parties without actual evidence of misconduct by the government that demonstrates a strong public interest in disclosure. Mr. Marino's allegations alone do not "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," and the only tangible interest Mr. Marino has identified is his own interest in the records to use to appeal his conviction. *Boyd*, 475 F.3d at 387. The Criminal Division properly withheld these records under Exemptions 6 and 7(C).

*ii.  USAO-MA/EOUSA*

After reviewing the records relevant to Mr. Marino's FOIA requests, USAO-MA and EOUSA released 156 pages in full, withheld 29 pages in full, and deemed three pages to be non-responsive. Mot. at 26 (citing Luczynski Decl. ¶ 6). USAO-MA and EUOSA withheld the 29 records in reliance on Exemptions 6, 7(C), 7(D), and 7(F).

As noted above, Exemption 6 allows the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6); and Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552 (b)(7)(C). When evaluating the government's justifications for withholding under Exemptions 6 and 7(C), the Court conducts a similar analysis to balance the privacy and public interests. *See Stern*, 737 F.2d at 91; *Reed*, 927 F.2d at 1251.

FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A source's confidentiality is determined on a case-by-case basis, and the Court must determine "whether the particular *source* spoke with an understanding that the communication would remain confidential." *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotations and citations omitted). The nature of the crime investigated and the informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179-80.

Exemption 7(F) provides for the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (F) could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

USAO-MA and EOUSA claim all of the preceding Exemptions for each of the records withheld or redacted. The records withheld contain: (1) "the names and/or identifying information, law enforcement officers and support employees, third parties of investigative interest, and third parties who provided information to law enforcement in the criminal prosecution of Marino"; (2) "names, identifying data, and/or information provided by individuals under an express or implied assurance of confidentiality"; and (3) "information concerning the identities of individuals and material that the individuals provided in connection with the investigation of plaintiff for violation of the federal criminal laws." Luczynski Decl. ¶¶ 11, 14-15, 17, 21. Defendants explain that based on the seriousness of the offenses charged against Mr. Marino, *i.e.*, murder in retaliation for actions connected to racketeering activities, cooperating witnesses provided information with the implied assurance that their identities would be confidential. *Id*. at ¶ 20. Assurances of confidentiality can also be implied when a witness is in obvious danger when providing testimony. *See Keys v. Dep't of Justice*, 830 F.2d 337, 345-46 (D.C. Cir. 1987) (holding that individuals who provided information about subject's possible Communist sympathies, criminal activity, and murder by foreign operatives would have worried about retaliation and, thus, had an implied assurance of confidentiality). As in *Keys*, where persons received an implied assurance of confidentiality due to the nature of the crimes and the obvious risk that the disclosure imposed on them, the individuals here would also obviously fear

danger from the individuals who were allegedly involved in criminal activities but not incarcerated and could seek retaliation.

Mr. Marino fails to detail a legitimate public interest that would outweigh the clear privacy interests at risk in releasing the records. USAO-MA and EOUSA, therefore, properly withheld responsive records under Exemptions 6, 7(C), 7(D), and 7(F).

### 3. Defendants Properly Provided all Segregable Non-Exempt Information to the Plaintiff

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). To demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification rather than conclusory statements. *Mead Data Cent.*, *Inc. v. Dep't of the Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977).

The Court has reviewed the Government's declarations and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn*, 484 F.2d at 827; *see also* Courter Decl. ¶ 30; Cunningham Decl. ¶ 12; Luczynski Decl. ¶ 24.

For the foregoing reasons, Defendants' Motion for Summary Judgment on the FOIA claim will be granted.

**B. Privacy Act Claim**

The Privacy Act of 1974, 5 U.S.C. § 552a, "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records by allowing an individual to participate in ensuring that his records are accurate and properly used." *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (internal quotations and citations omitted).

Plaintiff alleges that "Defendant's briefing . . . fails to address Mr. Marino's Privacy Act Claims." 1st Supp. at 2. Plaintiff argues that the Court must accept as true any factual assertions contained in Marino's Privacy Act claims "because the Defendants … failed to answer it [and] perform corrective action." *Id.* at 6. However Defendant *did* respond to Plaintiff's Privacy Act Request and explicitly addressed those requests in its motion. *See* Mot. at 7 n.5.

The Privacy Act allows for withholding records if: (1) they are stored in a system of records that has been deemed exempt from the Privacy Act's disclosure requirements; and (2) the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and . . . consists of . . . information compiled for the purpose of a criminal investigation." 5 U.S.C. § 552a(j)(2). Due to the fact that Defendants who maintained the records are all agencies that perform, as their principal function, enforcement of criminal law, and because all of the records in this matter were made for law enforcement purposes, the records were properly withheld by Defendants under Exemption (j)(2) of the Privacy Act of 1974.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Renewed Motion for

Summary Judgment.  A memorializing order accompanies this Opinion.


Date: September 6, 2016                    _____/s/_____
                                           ROSEMARY M. COLLYER
                                           United States District Judge